[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S AMENDED MOTION TO SUPPRESSDATED AUGUST 14, 1995.
The defendant moved to suppress any and all evidence obtained pursuant to, or as a result of, a search of burned flooring taken from the defendant's home on November 15, 1990, conducted by the Conn. Department of Public Safety, Division of State Police, Forensic Science Laboratory, between November 16, 1990 and November 29, 1990, and any and all evidence derived therefrom.
This court has already determined by Memorandum of Decision dated December 16, 1994 that the seizure of the burned flooring by fire officials without a warrant was lawful, because it was part of a "cause and origin" investigation of the fire which revealed a "low burn" pattern and "pour patterns" on the living room floor, which indicated the presence of a flammable liquid. [13 Conn. L. Rptr. No. 15, 498 (April 10, 1995).] Thereafter a specially trained accelerant-detecting dog was brought into the house, and he alerted to the "pour pattern" area of the floor, from which the charred wood was taken. This court held that the fire presented exigent circumstances that justified a warrantless search and that the flooring showing "low burn" and "pour patterns" was in "plain view". The court also held that if the defendant had an expectation of privacy inside his home during the "cause and origin" investigation, such an expectation would not be considered reasonable by the citizens of the State of Connecticut.
The defendant now claims that even if the seizure of the portions of burned living room flooring showing "low burn" and "pour patterns" which had been alerted to by a trained accelerant detecting dog, was lawful, a laboratory analysis of that flooring was unlawful without a search warrant.
In support of his argument, the defendant relies heavily on the case of State v. Joyce, 239 Conn. 10 (1994). In the Joyce
case, the defendant had been burned in a fire at his parents' home, and his clothing was cut off by a paramedic who treated him at the scene, in order to expose his injuries so that they could be cleaned and treated. The defendant was taken to the hospital and his clothing was placed on the ground by the side of the road. The police took the wet and burned clothing to the police CT Page 14501 department pursuant to their community caretaking function; at that time the defendant was not considered a suspect. Within a day, he did become a suspect, so the clothing was brought to the state forensic laboratory for chemical testing, without a warrant. It was tested in the same manner as the burned flooring in the instant case was tested, and the test revealed a pattern matching the known pattern for gasoline.
The Joyce court held that the warrantless chemical analysis of the clothing constituted an unconstitutional search under article first, § 7 of the Connecticut constitution.
 For the clothing to fall within the protection of article first, § 7, the defendant must have a reasonable expectation of privacy. In order to meet this rule of standing; State v. Pittman, 209 Conn. 596, 600-01, 553 A.2d 155 (1989); a two-part subjective/objective test must be satisfied: (1) whether the owner or custodian of the clothing "manifested a subjective expectation of privacy with respect to it" and (2) whether "that expectation [is] one that society would consider reasonable. . .". State v. DeFusco, supra, 224 Conn. 633. This determination is made on a case-by-case basis. State v. Reddick, 207 Conn. 323, 331, 541 A.2d 1209
(1988). "Whether a defendant's actual expectation of privacy . . . is one that society is prepared to recognize as reasonable involves a fact-specific inquiry into all the relevant circumstances." (Internal quotation marks omitted.) State v. Mooney, 218 Conn. 85, 94, 588 A.2d 145, cert. denied, 112 S.Ct. 330, 116 L.Ed.2d 270 (1991).
State v. Joyce, 229 Conn. 10, 20 (1994).
As to prong (1) of the two-part subjective/objective test for reasonable expectation of privacy, the Joyce court held that "We conclude that the defendant adequately exhibited his subjective expectation of privacy, as he `merely left his property behind him, more or less of necessity, making no attempt, however, to discard it or disassociate it form himself'" The Joyce court also made reference on page 22 to a 1981 Maine case where no abandonment was found where the injured defendant left his knapsack by the side of the road, hitchhiked to the police station, and then told the police that the pack belonged to him.
This court finds that the defendant manifested a subjective CT Page 14502 expectation of privacy with respect to his living room floor. Because of the fire and ensuing investigation, the defendant had to leave his home, and therefore of necessity, left his property behind, as in the Joyce case. He did not abandon the flooring. As to the second prong, the court must determine whether such expectation is one that society would consider reasonable, and in order to do so, must make a fact-specific inquiry into all the relevant circumstances. See Joyce, supra, 20.
The State argues:
 Secondly, settled case law compels a finding that the testing of these samples, lawfully seized does not give rise to a reasonable expectation of privacy in them by an accused.
State's Memorandum In Opposition To Defendant's Amended Motion ToSuppress, Page 9, (November 9, 1995).
The Joyce court commented on this issue:
 The state does not claim that mere custody of the defendant's property would entitle the police to search the property, and the law holds otherwise. State v. Miller, 227 Conn. 363, 386-87, 630 A.2d 1315 (1993); State v. Mooney, supra, 218 Conn. 100 (assuming that upon probable cause the police were entitled to seize belongings found under a bridge and preserve them while a proper search warrant was secured, we held that the warrantless search of the belongings violated the fourth amendment).
Joyce, supra, 21.
The Mooney case, supra involved a motion to suppress evidence that had been seized from the defendant's duffel bag and cardboard box during a warrantless search of an area under a bridge abutment where he had been living at the time of his arrest. The court said:
 Furthermore we assume that the police were entitled to seize the defendant's duffel bag and cardboard box upon probable cause to believe that they contained evidence, and to preserve them while a proper search warrant was secured. CT Page 14503
Mooney supra, 100.
After making the above assumption, the court went on to decide that the defendant had a reasonable expectation of privacy in the contents of the bag and box.
The Mooney court also stated, referring to several U.S. Supreme Court cases:
 A container which can support a reasonable expectation of privacy may not be searched, even on probable cause, without a warrant. . . .
Mooney, supra, 103.
In the case of State v. Miller, 227 Conn. the court decided the issue of whether the state constitution prohibits a warrantless automobile search supported by probable cause but conducted while the car was impounded at the police station. The court held as follows:
 In light of our demonstrated constitutional preference for warrants and our concomitant obligation narrowly to circumscribe exceptions to the state constitutional warrant requirement, we conclude that a warrantless automobile search supported by probable cause, but conducted after the automobile has been impounded at the police station, violates article first, § 7 of the Connecticut constitution.
State v. Miller, 227 Conn. 363, 387 (1993).
In light of these cases, the court finds that, contrary to the State's argument, the fact that the flooring was lawfully seized does not mean that the defendant could not have a reasonable expectation of privacy in it.
The State further argues that fire investigators "would be frustrated by the creation of a rule requiring them to obtain a search warrant before they could obtain the testing of material lawfully seized in the course of their investigation which contributes to the fulfillment of their duties." State's Memorandum, supra, 9. The court concludes that fire investigators either wouldn't or shouldn't be frustrated by having to obtain a search warrant, and if they were, such frustration shouldn't be CT Page 14504 allowed to override the defendant's constitutional rights. The court sees no significant impairment of society's interest in law enforcement by requiring the police to secure a warrant before searching the flooring, in order to preserve the defendant's privacy interest.
Finally, the defendant argues that "the defendant lacks standing to challenge the testing which was done on four samples of charred wood flooring lawfully taken from his home by the fire investigators during the course of their cause and original investigation." State's Memorandum, supra, 9. On page 4 of its memorandum, the State cites the following definition of standing as stated by the Mooney court, supra, at 94:
 The application of the fourth amendment prohibition against unreasonable searches and seizures requires the defendant to establish that he had a legitimate expectation of privacy in the invaded area. State v. Reddick, 207 Conn. 324, 330, 541 A.2d 1209 (1988). `Absent such an expectation the subsequent police action has no constitutional ramifications.'
State v. Brown, 198 Conn. 348, 355, 503 A.2d 566 (1986).
The state claims that because this court has already concluded that the defendant had no reasonable expectation of privacy in the premises during the overhaul process, he similarly has no legitimate expectation of privacy in the charred samples of wood flooring lawfully seized, and therefore the defendant has no standing.
The court, in this Memorandum of Decision, supra, has already rejected this argument.
The court concludes that the defendant did have a reasonable expectation of privacy in his living room floor, once the cause and origin investigation was completed. It was part of his home, accessible from inside the home only. It is entirely possible that an examination and testing of one's living room floor would reveal personal and private information about that person or family; for example, signs of incontinence, or use of various fluids and substances. The court finds that the defendant had an expectation of privacy in the floor of his living room, and that such expectation is one that the citizens of Connecticut would consider reasonable. CT Page 14505
The court further finds that the testing of the floor samples was a search. Our Connecticut Supreme Court has held concerning a similar test (of clothing):
 . . . that this chemical test, capable of determining a multitude of private facts about an individual, constituted a search under article first, section 7 of the state constitution.
Joyce, supra 221.
As a warrantless search, this search must be carefully examined.
 Under the state constitution, all warrantless searches, whether or not the police have probable cause to believe that a crime was committed, are per se unreasonable, unless they fall within one of a few delineated exceptions to the warrant requirement. State v. Blades, 225 Conn. 609, 617, 626 A.2d 273 (1993).
Joyce, supra, 24-25.
 These recognized exceptions derive primarily from acknowledged interests in protecting the safety of the police and the public and preserving evidence.
State v. Miller, supra, 227 Conn. 382, 83; Joyce, supra, 26.
 Our concern for the right to personal privacy and our preference for the warrant to protect that privacy was recently underscored when we pointed out that even if the police act without a warrant under the emergency exception, once that emergency ceases to exist, the police must terminate their intrusive conduct.
State v. Geisler, supra, 222 Conn. 695-96; State v. Joyce, supra, 27.
The flooring was taken to the laboratory the day after the fire; on that day no exigent circumstances existed. The cause and origin investigation was completed the day before and the flooring samples were locked in an evidence locker at the police barracks. CT Page 14506
The burden of proof on the issue of an exception to the warrant requirement is on the State.
 These exceptions `have been jealously and carefully drawn.' Jones v. United States, 357 U.S. 493, 4998, k 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958); and the burden is on the state to establish the exception.
State v. Badgett, 200 Conn. 412, 424 (1986).
The court finds that the chemical analysis of the defendant's living room flooring should be suppressed as the result of a warrantless search unsupported by exigent circumstances or any other recognized exception to the warrant requirement.
The motion is granted.
RICHARD A. WALSH, J.